United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Janice Ceciela Lord, Appellant, | ) |
| | ) |
| v. | )   Bankruptcy Appeal |
| | )   Case No. 19-24113-Civ-Scola |
| | ) |
| True Funding, LLC, Appellee. | ) |

### Order Affirming Bankruptcy Court Judgment

The United States Bankruptcy Court for the Southern District of Florida, on September 17, 2019, annulled the automatic stay in Appellant Debtor Janice Ceciela Lord's bankruptcy case, thus preventing her bid to void the state-court foreclosure sale of her Miami home four months earlier. (Bankr. Ct. Order, ECF No. 7-2, 60–61.) Lord now asks this Court to reverse that decision, arguing the bankruptcy court abused its discretion in retroactively annulling the automatic stay. (Appellant's Init. Br., ECF No. 14.) Appellee True Funding, LLC, the winning bidder at the foreclosure sale, opposes Lord's appeal. (Appellee's Resp. Br., ECF No. 15.) Lord has, in turn, replied to True Funding's response. (Appellant's Reply Br., ECF No. 16.) After careful review of the briefing and the record in this case, the Court finds the bankruptcy court did not abuse its discretion in annulling the stay and **affirms** the order below.

1. **Background**

Lord is a defendant in a state foreclosure case, *Reverse Mortgage Solutions, Inc. v. Dawn de Florimonte, et al.*, Case No. 2014-010049-CA-01, pending in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida since April 2014. (Init. Br. at 5.) A final judgment was entered in that case in September 2016. (*Id.*) Since the entry of that final judgment, the foreclosure sale was canceled and rescheduled nine times, five of which were upon Lord's motion. (*Id.*; Reply Br. at 9.) In the final order cancelling the sale, on February 25, 2019, the court warned, "No further cancellations will be permitted." (Resp. Br. at 10.)

Thereafter, the state court set the foreclosure sale for May 28, 2019, at 9:00 a.m. (Init. Br. at 5.) At 8:58 a.m. on that day, however, Lord filed a Chapter 13 bankruptcy petition. (*Id.*) She did not file a suggestion of bankruptcy in the state court until 9:26 a.m., though, by which time the foreclosure sale had already concluded. (*Id.*; Resp. Br. at 11.) The property sold at the sale to third-party purchaser True Funding, which paid $294,300 into the state-court registry. (Resp. Br. at 11.) Neither the certificate of sale nor

certificate of title was issued, however, as a result of Lord's bankruptcy filing. (*Id.*)

A few weeks later, after Lord failed to file, among other things, her bankruptcy matrix and schedules, the bankruptcy court, on June 12, 2019, dismissed her case. (*Id.*) In the meantime, Lord sought, in the state court, to have the foreclosure sale vacated. (*Id.*) After a hearing, on August 21, 2019, the state court entered an order deferring ruling on Lord's motion to vacate to allow the parties to seek an order from the bankruptcy court regarding the effect of the automatic stay on the sale. (*Id.*) A few days later, Lord filed motions in the bankruptcy court to (1) reopen her bankruptcy case and (2) "clarify automatic stay as to Reverse Mortgage Solutions, Inc." (ECF No. 7-2, 21–24.) Prior to that, however, Lord had not taken any action, since the dismissal of her bankruptcy case, to seek reinstatement or otherwise demonstrate that she had any intention of pursuing bankruptcy relief. (Resp. Br. at 11.)

Regarding her motions before the bankruptcy court, Lord self-calendared a non-evidentiary hearing. (*Id.* at 11–12.) At this hearing, the bankruptcy court found cause to annul the stay, thereby validating the foreclosure sale, while at the same time reopening Lord's bankruptcy case. (Hr'g Tr. 20:11–21:2, ECF No. 8, 20–21.) The bankruptcy court also noted that, even if Lord's bankruptcy had continued, the court would have still found cause to annul the stay. (*Id.* at 22:9–11.) A few days later, the bankruptcy court entered a written order and then Lord's appeal followed.[1]

**2. Discussion**

Lord complains the bankruptcy court abused its discretion in annulling the automatic stay retroactively, improperly allowing the foreclosure sale to go forward. She argues, principally, that the bankruptcy court erred by failing to conduct an evidentiary hearing to determine whether retroactive stay relief was warranted. Relatedly, she objects to the bankruptcy court's reliance on hearsay and other inadmissible evidence in granting the stay relief. As a result, she says, the bankruptcy court failed to properly evaluate the *Stockwell* factors which she maintains all militate in her favor. *In re Stockwell*, 262 B.R. 275, 278 (Bankr. D. Vt. 2001).

In response, True Funding submits (1) the bankruptcy court was not required to hold an evidentiary hearing; (2) but even if it was, Lord waived any

---

[1] The Court agrees with True Funding that Lord's failure to either timely file her initial brief or thereafter bother, to this day, to seek a retroactive extension of time to do so are troubling. This, combined with Lord's failure to timely submit her designations, appears to reveal a pattern regarding Lord's counsel's failure to diligently prosecute this appeal or take compliance with Court orders seriously. Counsel is forewarned that future noncompliance may result in sanctions.

right to such a hearing by failing to raise it below; (3) the bankruptcy court's consideration of True Funding's counsel's proffer was not in error; (4) or, if it was, Lord has not shown that the error prejudiced her; and (5) the *Stockwell* factors, in any event, support the annulment of the stay. After careful review, the Court agrees with True Funding and affirms the bankruptcy court's decision to annul the stay.

As a starting point, under the Bankruptcy Code, the filing of a petition automatically stays most judicial actions against the debtor. 11 U.S.C. § 362(a)(1). This stay is intended "to give debtors 'breathing room' after filing their petition." *B.F. Goodrich Emps. Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 512 n. 9 (11th Cir.1992). This "fundamental debtor protection[]" allows the debtor the opportunity to "attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.*

"The party seeking relief from the automatic stay must establish a *prima facie* case of cause for relief." *In matter of Shree Meldikrupa Inc.*, 547 B.R. 862, 871 (Bankr. S.D. Ga. 2016). "Cause" is not defined under § 362(d) and therefore is assessed on a case-by-case basis, with courts being afforded wide latitude in deciding whether to grant relief. *See In re Feingold,* 730 F.3d 1268, 1277 (11th Cir. 2013); *In re Rivera*, 9:15-BK-08721-FMD, 2016 WL 513900, at *3 (Bankr. M.D. Fla. Feb. 9, 2016) ("The bankruptcy court's determination of whether to annul the stay is made on a case-by-case basis and falls within the wide latitude of the court.") In the Eleventh Circuit, a debtor's lack of good faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay. *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987). Once the party seeking relief establishes a prima facie case for cause to annul the stay, "the burden shifts to the debtor to prove cause does not exist" and that she is entitled to maintain protection from the automatic stay. *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004) (citing 11 U.S.C. § 362(g)); *In re Brumlik*, 185 B.R. 887, 889 (Bankr. M.D. Fla. 1995) ("Once a moving party establishes 'cause' for relief from [a] stay, the burden then shifts to the debtor to demonstrate that he is entitled to protection of the automatic stay.")

Lord maintains that it was an abuse of discretion for the bankruptcy court to find an annulment of the stay warranted without holding an evidentiary hearing. Lord does not explain whether she thinks an evidentiary hearing is required when a movant seeks to establish its prima facie case, when the debtor seeks to rebut a showing of cause for relief, or both. Regardless, she has not supplied any legal authority to support her argument that an evidentiary hearing was required at all, at any point. Indeed, the Bankruptcy Code makes no mention of an evidentiary hearing, providing only,

under § 362(d), a bankruptcy court may grant relief from an automatic stay "after notice and hearing." 11 U.S.C. § 362(d). The phrase "after notice and a hearing" is, in turn, defined as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). In short, the Court finds no support for Lord's contention that the Court must reverse the bankruptcy court's annulment because it failed to conduct an evidentiary hearing.

Additionally, even if Lord could show some entitlement to an evidentiary hearing, she waived any such entitlement by failing to request it below. *In re Blaise*, 219 B.R. 946, 949 (B.A.P. 2d Cir. 1998) (finding debtor had no entitlement to an evidentiary hearing where he never requested one from the bankruptcy court and that, in any event, "an appellate court will not consider an issue raised for the first time on appeal"). While Lord at least acknowledges this general proposition, she maintains, again without any legal support, that her case is excepted from this general rule because she ultimately offered evidence during the hearing before the bankruptcy court. In support she says, during the hearing, she "requested evidence be presented regarding her good faith efforts to cure the defaulted mortgage and to demonstrate that she engaged in delay and stall tactics" and "requested that testimony be taken and evidence presented." (Reply Br. at 7, 8.) She complains the bankruptcy court, in response, only "allowed very limited testimony." (*Id.* at 8.)

Lord's description of what happened at the hearing is misleading if not wholly inaccurate. At one point Lord's counsel attempted to explain to the bankruptcy court why Lord had not attempted to reinstate her bankruptcy case after its dismissal and proffered to the court that Lord could "testify to that if . . . the court would like to hear that directly from . . . her." (Tr. at 15:4–6.) Counsel also informed "the debtor is here today to testify, if necessary, as to why she did not file her schedules and . . . the petition got dismissed." (*Id.* at 14:7–10.) Later, when the court inquired as to the numerous foreclosure-sale cancellations before the state court, counsel asked the court if Lord could "speak to that." (*Id.* at 19:10–11.) When the court told her to "go ahead," Lord relayed as follows:

> Your Honor, this was in [2017], and ten days later, [the bank] called me to tell me that the sale did not go through because they received the funds a day late. The bank said they would get back to me, but that [wasn't] the case, Your Honor. But as to why they had the cancellations, Your Honor, after my great aunt died, they said the building had to go in[to] probate, and this was it. It went to probate, Your Honor, and I don't know what happened there. They throw it out, then they say refile it, throw it out. Then they say I

> was on the deed and I didn't need a probate. And then the last time we went to Judge Thornton, I produced the chart, the payoff that they gave, and the bank said they had no idea.

(*Id.* at 19:15–20:4.) But none of this amounts to Lord's actually requesting an evidentiary hearing. Further, the bankruptcy court in no way limited Lord when she spoke to the court or prevented further testimony. Finally, even if the court had limited Lord's testimony, she never objected or even voiced any concerns, below, about not having had an opportunity to fully present her case. Indeed, the record shows Lord was given a full opportunity to contest the annulment of the stay and never requested a separate evidentiary hearing. Accordingly, the bankruptcy court did not abuse its discretion in granting stay relief without an evidentiary hearing. *See In re Froman*, 566 B.R. 641, 653 (S.D.N.Y. 2017) (finding the bankruptcy court did not abuse its discretion in granting stay relief without an evidentiary hearing where the debtor did not request one and did not "rais[e] any additional points with the Bankruptcy Court when given the opportunity to do so"); *In re I Don't Tr.*, 143 F.3d 1, 3 (1st Cir. 1998) ("The words 'after notice and hearing' denote notice and an opportunity for a hearing *as appropriate in the particular circumstances,* but a hearing—much less an evidentiary hearing—is not required in every instance.") (emphasis in original).

Lord also complains it was error for the bankruptcy court to have considered True Funding's proffer regarding Lord's part in seeking five of the nine foreclosure-sale cancellations in the state-court proceedings. In support, Lord points to (1) the affected creditor's absence from the bankruptcy-court proceedings; and (2) the inadmissibility of True Funding's proffer. (Init. Br. at 9–10.) To begin with, Lord fails to provide any support for her contention that a stay annulment is impermissible simply because the lender itself did not assert an objection to her motions. Nor can the Court itself find any support for the proposition that relief from a stay, in this kind of case, can only be granted if sought by a lender. Further, while True Funding described its understanding of the delays attendant to the state-court foreclosure proceedings, the bankruptcy court also had before it the state-court docket. Lord does not dispute that the bankruptcy court reviewed the state-court docket, nor does she complain that she was not given a full opportunity to comment on or rebut True Funding's proffer or the bankruptcy court's own assessment of the state-court docket. Lastly, even if the bankruptcy court misapprehended the sequence and cause of the cancellations in the foreclosure case, she has not established that such a misunderstanding was in anyway prejudicial do her. Simply referring to the bankruptcy court's reading of the docket as erroneous is not enough to support reversal. *In re Club Associates*, 951 F.2d 1223, 1234 (11th Cir. 1992) ("An error

is presumed harmless unless it affected the substantial rights of a party. The party asserting error has the burden of proving that the error prejudiced a substantial right of that party.").

Finally, given the totality of the circumstances, the Court finds the bankruptcy court did not abuse its discretion in finding stay relief warranted in this case. The state-court foreclosure case dragged on for over five years. After the ninth sale cancellation, the state court set a final sale date, warning the parties there would be no further cancellations permitted. (Resp. Br. at 10.) Two minutes before that sale was to start, Lord filed her petition for bankruptcy. She then filed her suggestion of bankruptcy nearly half an hour later, after the sale had concluded with the True Funding's placing the winning bid as an innocent purchaser, wholly without notice of Lord's bankruptcy petition. Two weeks later, Lord's bankruptcy case was dismissed when she failed to file her service matrix or any required schedules. Indeed, Lord made no appearance whatsoever in her bankruptcy case, for over two months, until the state court prompted the parties to seek relief before the bankruptcy court regarding the foreclosure sale. And while Lord's counsel, during the hearing before the bankruptcy court, attributed the dismissal, along with the absence of any effort to reinstate, to Lord's health issues, Lord never mentioned any such health issues in either her motion to reopen her bankruptcy case or her motion to clarify the automatic stay. Lord also doesn't reference any health issues whatsoever in her appellate briefing before this Court. Ultimately, then, on this record, the Court agrees with the bankruptcy court that to allow Lord to "come back in now and start all over in bankruptcy with a whole new set of negotiations or sales, [is] too little, too late under these circumstances." (Tr. at 22:1–4.)

### 3. Conclusion

As set forth above, Lord has not established reversible error. The Court therefore **affirms** the bankruptcy court's decision. The Clerk is directed to **close** this case and **deny** any pending motions **as moot**.

**Done and ordered**, at Miami, Florida, on July 28, 2020.

Robert N. Scola, Jr.
United States District Judge